**UNITED STATES of America,**

v.

**Anthony BROOMER, Appellant.**

**No. 02–3138.**

United States Court of Appeals, Third Circuit.

Argued May 21, 2003.

Decided Aug. 12, 2003.

William J. Honig (Argued), Norristown, Pennsylvania, for Appellant.

Louis D. Lappen (Argued), Office of United States Attorney, Philadelphia, Pennsylvania, for Appellee.

Before SCIRICA, Chief Judge, SLOVITER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

The defendant has appealed the upward departure of his sentence. We will affirm.

### I.

In the spring of 2001, defendant Anthony Broomer committed a series of armed bank robberies.[1] On March 20, 2002, Broomer pleaded guilty to four counts of armed bank robbery.[2] The Presentence Investigation Report initially calculated Broomer's offense level at 31, reduced to 28 by application of a three-level reduction for acceptance of responsibility, and a criminal history category of III, resulting in a sentencing guideline range of 97 to 121 months imprisonment.[3]

But the Presentence Investigation Report recommended that Broomer be sentenced under the career offender guideline, meaning his offense level would rise to 34, before the three-level adjustment for acceptance of responsibility, and his criminal history category would be VI. See U.S.S.G. § 4B1.1.[4] The Presentence Inves-

---

1. On the morning of April 11, 2001, Broomer forced a cleaning person at the Abington Bank to open the bank's doors by pointing at her an object covered by a bandana that appeared to be a gun. Broomer restrained her and waited for a bank employee to arrive so that he could gain access to the bank's safe. But Broomer left before anyone arrived, stealing the cleaning person's car that contained $700 in cash.

   Later that day, Broomer entered a First Union Bank, approached the counter carrying a large envelope that appeared to conceal a gun and ordered a teller to give him money. The teller threw $1,025 in cash across the counter and onto the floor. Broomer snatched up $874 before fleeing.

   On May 30, 2001, Broomer and two others, Corey Ford and Oshea Jenkins, robbed the Progress Bank. Broomer pointed an object that appeared to be a gun at the bank tellers, while he and Ford stole $3,542. The getaway car was operated by Jenkins.

   Finally, on June 1, 2001, Broomer, Ford and Jenkins robbed another First Union Bank. This time Ford used a fake gun, while he and Broomer stole $14,372. Again Jenkins drove the getaway car.

2. Broomer pleaded guilty to two counts of armed bank robbery, 18 U.S.C. § 2113(d), and two counts of armed bank robbery and aiding and abetting, 18 U.S.C. §§ 2113(d), 2.

3. The Presentence Investigation Report applied the November 1, 2001 edition of the Guidelines Manual, as this was the edition in effect at Broomer's July 24, 2002 sentencing. See U.S.S.G. § 1B1.11, policy statement ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). Unless otherwise indicated, discussion of the guidelines refers to those in effect in the November 1, 2001 edition.

4. As discussed in greater detail, the career offender guideline applies when a defendant has at least three qualifying convictions, including that for the current offense. See U.S.S.G. § 4B1.1. When a defendant is sentenced under the career offender guideline, his offense level is the greater of the offense level for the current offense or an offense level calculated specifically under the career offender guideline. See id. The offense level calculated under the career offender guideline is based upon the statutory maximum for the

tigation Report recommended the career offender guideline because, in addition to the current offenses, Broomer had been convicted and sentenced for a prior robbery and had pleaded guilty to a controlled substance offense for which he had not yet been sentenced because of his intervening arrest for the current offenses.[5] Under the career offender guideline, an offense level of 31 with a criminal history category of VI called for a guideline range of 188 to 235 months imprisonment.

Broomer objected to the recommendation, contending application of the career offender guideline required a sentence on all prior convictions. Because he had not been sentenced on the controlled substance offense, Broomer maintained he could not be a career offender.[6]

The Addendum to the Presentence Investigation Report responded to Broomer's objection, arguing that the career offender guideline was applicable. Nevertheless, the government proffered a different argument at sentencing. In its Sentencing Memorandum, the government asked the District Court to assume without deciding that the guidelines were ambiguous on whether an unsentenced conviction could be counted as a qualifying conviction for

career offender purposes, thus rendering the career offender guideline inapplicable. But the government then asked the District Court to depart upward to sentence Broomer as if he were a career offender.

The District Court followed the government's recommendation, stating that, "[u]nder U.S.S.G. § 4B1.1, the defendant would be considered a career offender but for the fact that he has not yet been sentenced on his conviction for possessing with intent to distribute a controlled substance." The court "assume[d] without deciding that under U.S.S.G. § 4B1.1, the defendant cannot be considered a career offender because he has not yet been sentenced on this otherwise qualifying predicate conviction for a controlled substance offense." Under U.S.S.G. §§ 5K2.0, policy statement and 4A1.3, policy statement, the court then "depart[ed] upward to the applicable guideline range for a career offender." With a guideline range between 188 and 235 months imprisonment, stemming from an offense level of 31 and a criminal history category of VI, the District Court sentenced Broomer to 204 months imprisonment.[7]

Broomer now appeals, contending the upward departure was improper.[8]

---

current offense. *See id.* A career offender's criminal history category is always VI. *See id.*

**5.** The Presentence Investigation Report states that Broomer was arrested in November 1990 for robbery. He was sentenced in April 1991 to nine to twenty-three months imprisonment with three years consecutive probation. Broomer was then arrested in January 1999 for possession of a controlled substance with intent to distribute. He pleaded guilty to this offense in January 2001. Broomer was arrested for the current offenses in June 2001 before he was sentenced for the drug offense. The government stated at oral argument that Broomer was eventually sentenced for the drug offense in January 2003.

**6.** Broomer also contended that his earlier robbery conviction could not be considered a

qualifying predicate conviction for career offender purposes. The Addendum to the Presentence Investigation Report explained that this objection was without merit. Broomer has not contested this point further.

**7.** Apparently, Broomer filed a motion seeking a downward departure if the District Court held that he was a career offender. At the conclusion of the sentencing hearing, the District Court denied the motion as moot. Broomer does not challenge the denial on appeal and we see no error.

**8.** We have jurisdiction under 18 U.S.C. § 3742. We note that 18 U.S.C. § 3742 was amended on April 30, 2003 to provide that certain district court decisions to depart upward are reviewed *de novo*. *See 18 U.S.C.*

## II.

### A.

Section 4B1.1 of the Sentencing Guidelines provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The government points out that the definition of "two prior felony convictions" may be ambiguous. The Sentencing Guidelines explain:

The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . . and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c).

U.S.S.G. § 4B1.2. The government states that the possible ambiguity arises because the second part of this definition refers to "sentences," rather than "convictions."

At sentencing, the government cited to *United States v. Jones,* 908 F.2d 365 (8th Cir.1990), where the United States Court of Appeals for the Eighth Circuit found the career offender guideline was ambiguous and could not directly apply when

there were unsentenced, but otherwise qualifying prior convictions. The Eighth Circuit, however, concluded it was appropriate to depart upward to sentence the defendant with unsentenced convictions as if he were a career offender. *See also United States v. Bassil,* 932 F.2d 342, 347 (4th Cir.1991) (holding that the career offender guideline could not directly apply when there was an unsentenced conviction, but allowing the district court on remand "to consider departing from the Guidelines in order to sentence a defendant, whose conduct delayed his convictions, as if the career offender provision applied"). In its judgment here, the District Court relied on *Jones* in assuming that the career offender guideline was not directly applicable, but then departing upward.

Because the matter was not presented or argued before the District Court or our court, we will not address whether the career offender guideline is in fact ambiguous and whether it should nonetheless directly apply when there is an unsentenced conviction. But we note that other courts have recently held that the career offender guideline is directly applicable when there is an unsentenced, but otherwise qualifying prior conviction. *See United States v. French,* 312 F.3d 1286, 1287 (9th Cir.2002) ("[T]he plain language in § 4B1.1 provides that for the purposes of the sentence enhancement, a conviction shall be counted from the date that a guilty plea is entered and not from the date of sentencing.") (quotations omitted); *United States v. Riley,* No. 97–4186, 1998 WL 669935, 1998 U.S.App. LEXIS 24137, at *3 (6th Cir. Sept. 17, 1998) ("Although [the defendant]

§ 3742(e). The government concedes that this standard, rather than the more deferential abuse of discretion standard, applies in this case.

Broomer suggests the facts here must be established by clear and convincing evidence,

rather than under a preponderance standard. *See United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990). Because there is no dispute over the facts in this case, the government has met its burden under either standard.

had not been sentenced on his state court convictions, they were properly counted under § 4B1.1."). Furthermore, the Eighth Circuit now has modified its view and directly applied the career offender guideline with an unsentenced conviction. *See United States v. Gonzales,* 220 F.3d 922, 926 (8th Cir.2000) ("We believe ... that an unsentenced guilty plea is a 'prior conviction' for purposes of § 4B1.1."). Thus, when an otherwise qualifying prior conviction is unsentenced, courts considering the issue have held that it is proper to sentence a defendant as a career offender, whether under direct application of the career offender guideline or through an upward departure to the applicable sentencing guideline range.[9]

### B.

In departing upward, the District Court relied on U.S.S.G. §§ 5K2.0, policy statement and 4A1.3, policy statement. Section 5K2.0 addresses departures in general, providing:

the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

U.S.S.G. § 5K2.0, policy statement (quoting 18 U.S.C. § 3553(b)). Section 4A1.3 focuses on departures when a defendant's criminal history category does not accurately reflect the defendant's past criminal conduct and likelihood of recidivism. The section provides:

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning ... whether the defendant was pending ... sentencing on another charge at the time of the instant offense.

U.S.S.G. § 4A1.3, policy statement. Upward departures under § 4A1.3, policy statement usually involve "stepping up [a defendant's] criminal history category" in order to sentence the defendant under a more appropriate guideline range. *United*

---

9. Amendments to the Sentencing Guidelines made over time may explain why more recent decisions no longer find the guidelines ambiguous. In 1991, Amendment 381 added language to § 4A1.2 providing that "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) if a sentence resulting from that conviction otherwise would be countable." The Sentencing Commission has explained that "[t]he provisions of § 4A1.2 ... are applicable to the counting of convictions under § 4B1.1" U.S.S.G. § 4B1.2 cmt. n.4.

Prior Sentencing Guidelines had stated that, with respect to the two prior felonies requirement, "[t]he date that a defendant sustained a conviction shall be the date the judg-

ment of conviction was entered." U.S.S.G. § 4B1.2 (1991). In 1992, Amendment 461 changed this provision, which now provides that "[t]he date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere.*" U.S.S.G. § 4B1.2.

In *Gonzales,* the Eighth Circuit emphasized the amended language to conclude that "an unsentenced guilty plea is a 'prior conviction' for purposes of § 4B1.1." 220 F.3d at 926; *see also French,* 312 F.3d at 1287 (citing to the amended language in concluding that "a conviction [is] considered a qualifying predicate offense effective from the date that a guilty plea is entered, regardless of whether a sentence has been imposed").

*States v. Harvey*, 2 F.3d 1318, 1325 (3d Cir.1993). But, § 4A1.3, policy statement also provides that, on the limited occasions when criminal history category VI, the highest category, "is not adequate to reflect the seriousness of the defendant's criminal history," a court may depart upward "by moving incrementally ... to the next higher offense level in criminal history category VI until it finds a guideline range appropriate to the case." In the context of a downward departure from a career offender guideline range, we held that a court may depart in both criminal history and offense level categories under § 4A1.3, policy statement. *See United States v. Shoupe*, 35 F.3d 835, 838 (3d Cir.1994) ("We believe [the] express reference to offense level departures indicates the Sentencing Commission intended § 4A1.3 to govern more than just departures in the criminal history category.").

In this case, the District Court did not err in departing upward to sentence Broomer as if he were a career offender. Assuming an ambiguity in the career offender guideline, the Sentencing Commission has not adequately taken into consideration the situation where a defendant has an unsentenced, but otherwise qualifying prior conviction. As even Broomer admits that he has been convicted of the predicate and instant offenses that would otherwise render him a career offender,[10] it is appropriate to address this circumstance by departing upward under § 5K2.0, policy statement to sentence him as if he were a career offender. Moreover, because Broomer has been convicted of all the requisite crimes for a career offender, a sentence below the career offender guideline range would not adequately re-

flect the seriousness of his criminal history. *See Shoupe*, 35 F.3d at 838 ("Career offender status is a function of past crimes committed ... and, therefore, is a function of a defendant's criminal history."). Thus, departing upward under § 4A1.3, policy statement is also proper. Because the Sentencing Guidelines and our jurisprudence have contemplated departures under § 4A1.3, policy statement that affect both the criminal history and offense level categories, we believe it was appropriate here to depart upward in both categories to sentence Broomer as if he were a career offender.

Broomer argues that even if some type of upward departure is warranted, the court should not jump from his initial offense level 28 and criminal history category III to the offense level 31 and criminal history category VI mandated by the career offender guideline. Generally, upward departures should be considered in incremental steps. In particular, when departing upward under § 4A1.3, policy statement, a court should determine which higher criminal history category "best represents the defendant's prior criminal history [by] ... proceed[ing] sequentially through the categories and ... not mov[ing] to the next category until it has found that a prior category still fails adequately to reflect the seriousness of the defendant's history." *United States v. Cicirello*, 301 F.3d 135, 145 (3d Cir.2002). This "ratcheting procedure" ensures that a court carefully considers each criminal history category when formulating the appropriate departure. *United States v. Hickman*, 991 F.2d 1110, 1114 (3d Cir.1993). At the same time, the ratcheting proce-

---

**10.** At the sentencing hearing, the District Court stated:

> [B]ut for the fact that [Broomer] didn't quite make it in for the sentencing [on the prior drug offense], he would have been a

career offender. There wouldn't have been any debate about it, would there?

Broomer's attorney responded:

> If he had been sentenced, no, there wouldn't have been.

dure "does not require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category that it selects." *United States v. Harris*, 44 F.3d 1206, 1212 (3d Cir.1995) (quotations omitted). The key is that "the sentencing court's reasons for rejecting each lesser category be clear from the record as a whole." *Id.*

Here, there was no error in departing straight to offense level 31 and criminal history category VI mandated by the career offender guideline. It is clear from the record that Broomer's past and current criminal conduct is that of a career offender and, as such, he can be sentenced as dictated by the career offender guideline. Any offense level below 31 or criminal history category below VI may fail to account adequately for the seriousness of Broomer's past and current criminal con-

duct. Thus, it was not necessary for the District Court to mechanically reject each lower offense level and criminal history category when it is clear why offense level 31 and criminal history category VI apply.[11]

## C.

In affirming the upward departure, we successfully "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a) (explaining the "[f]actors to be considered in imposing a sentence"). Here, Broomer has the convictions of a career offender, thus he receives a sentence applicable to career offenders. In similar situations, courts have either directly applied the career offender guideline or upwardly departed to sentence the defendant as if he were a career offender.[12] Our decision

---

**11.** In affirming an upward departure to the career offender guideline range under other circumstances, the United States Court of Appeals for the Fourth Circuit similarly held that strict adherence to the ratcheting procedure was not necessary. The court stated:

> Once the district court determines that a departure under U.S.S.G. § 4A1.3, p.s. is warranted and that the defendant's prior criminal conduct is of sufficient seriousness to conclude that he should be treated as a career offender, the district court may depart directly to the guideline range applicable to career offenders similar to the defendant. . . .
>
> [A]nalogizing to the career offender guideline provides a reasoned basis for the extent of the departure. When a district court properly employs this approach, this determination includes an implicit finding that each successive Criminal History Category that would not produce a career offender sentence inadequately represents the seriousness of the defendant's criminal conduct. Therefore, we conclude that level by level consideration is unnecessary under these circumstances.

*United States v. Cash*, 983 F.2d 558, 562 (4th Cir.1992).

**12.** As noted, the Eighth Circuit in *Jones* employed similar reasoning under similar circumstances to affirm an upward departure to the career offender guideline range. *See also Bassil*, 932 F.2d at 347 (stating that an upward departure to the career offender guideline range may be appropriate on remand). Given the amendments to the Sentencing Guidelines that followed *Jones* and *Bassil*, these decisions may be outdated as courts have recently held the career offender guideline is directly applicable when there is an unsentenced conviction. But because we are assuming that the career offender guideline cannot be directly applied here, we find *Jones* and *Bassil* helpful in concluding that if the guideline is ambiguous, an upward departure is appropriate.

Broomer cites to *United States v. Faulkner*, 952 F.2d 1066 *amending* 934 F.2d 190 (9th Cir.1991), to support his claim that the upward departure here is improper. In *Faulkner*, the defendant pleaded guilty to five counts of bank robbery. The defendant had already been convicted and sentenced for a prior robbery. Moreover, at the time of the instant offenses, the defendant was "awaiting sentencing on a state charge of false impris-

maintains a consistency in sentencing defendants with the requisite convictions, but who have not been sentenced for a prior offense.

## III.

For these reasons, we will affirm the judgment of sentence.

onment to which he had pleaded *nolo contendere.*" *Id.* at 1068. But, by the time of the federal sentencing hearing for the instant offenses, the state "had dismissed the [false imprisonment] charge altogether, notwithstanding the fact that [the defendant] had pleaded *nolo contendere.*" *Id.* at 1072; *see also id.* at 1073 ("The state, for reasons not entirely clear from the record, dropped the false imprisonment charges against [the defendant] at some time after he entered his plea.").

Nevertheless, the district court departed upward in sentencing the defendant because, among other reasons, "the defendant was awaiting sentencing after a plea of *nolo contendere*" at the time of the instant offenses and "had the defendant been sentenced on [the false imprisonment] charge ... he would have been a career offender within the meaning of U.S.S.G. § 4B1.1." *Id.* at 1071. The United States Court of Appeals for the Ninth Circuit held that the upward departure was improper. The court of appeals believed that it was not "reasonable for a sentencing court to justify the degree of its departure by analogizing to the career offender provisions of the guidelines, when the defendant [was] not a career offender because he had not been convicted of two crimes of violence at the time he committed the instant offense." *Id.* at 1072.

Because one of the prior felony charges in *Faulkner* had been dismissed by the time of the sentencing hearing, we believe the case is distinguishable. Unlike in *Faulkner*, here there are two otherwise qualifying prior convictions. Because the only issue here is that one of these convictions is unsentenced, we do not believe that *Faulkner* calls into question our affirmance of the upward departure to the career offender guideline range.

Moreover, as noted, the Ninth Circuit has recently held that, under circumstances similar to those here, the defendant should be sentenced as a career offender. *See French,* 312 F.3d at 1287. In *French,* the defendant pleaded guilty to two counts of bank robbery. He had already been convicted of a prior burglary and had also entered a guilty plea to a state charge of robbery. But, although the defendant "had entered his plea at the time of his federal sentencing hearing, he had not yet been sentenced on his state robbery charge." *Id.* In reviewing the defendant's sentence, the court of appeals held that the district court properly "counted [the defendant's] plea [on the prior robbery charge] as a predicate conviction under § 4B1.1 [even though the defendant] had not been sentenced for the crime prior to the federal sentencing hearing." *Id.*